IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)

| | | |
|---|---|---|
| RYAN HOCHWALT | ) | CASE NO. |
| 1210 DAY LILLY WAY | ) | |
| TROY, OH 45373 | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | |
| JAPAN TOBACCO INTERNATIONAL | ) | **JURY DEMAND ENDORSED** |
| U.S.A., INC. | ) | **HEREIN** |
| 300 FRANK W. BURR BLVD, SUITE 70 | ) | |
| TEANECK, NJ 07666 | ) | |
| | ) | |
| **Serve also:** | ) | |
| CORPORATION SERVICE | ) | |
| COMPANY (STATUTORY AGENT) | ) | |
| 1160 DUBLIN ROAD, SUITE 400 | ) | |
| COLUMBUS OH 43215 | ) | |

Defendant.

Plaintiff, Ryan Hochwalt, by and through undersigned counsel, as his Complaint against

Defendant, states and avers the following:

## **PARTIES**

1.      Hochwalt is a resident of the city of Troy, county of Miami, state of Ohio.

2.      Japan Tobacco International U.S.A. Inc., ("JTI") is a foreign corporation headquartered in

Teaneck, New Jersey.

3.      JTI was at all times hereinafter mentioned an employer within the meaning of Ohio R.C. §

4112.01 *et seq*; 42 U.S.C. 2000e-2 *et seq*.; 42 U.S.C. 126 § 12101 *et seq*.; 29 U.S.C § 2601,

*et seq*.

## JURISDICTION & VENUE

4.    JTI hires citizens of the state of Ohio, contracts with companies in Ohio, and owns or rents property in Ohio. As such, the exercise of personal jurisdiction over JTI comports with due process.

5.    This cause of action arose from or relates to the contracts of JTI with Ohio residents, thereby conferring specific jurisdiction over JTI

6.    This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1341 inasmuch the matters in controversy are brought pursuant to Family and Medical Leave Act ("FMLA"), 29 U.S.C § 2601, *et seq.,* the Americans with Disabilities Act ("ADA"), 42 U.S.C. 126 § 12101 *et seq.*, and the Civil Rights Act of 1964, 42 U.S.C. 2000e-2.

7.    This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Hochwalt's state law claims because those claims derive from a common nucleus of operative facts.

8.    Venue is proper in this District because the wrongs herein alleged occurred in this District.

9.    Hochwalt has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

10.    Hochwalt is a former employee of JTI

11.    JTI hired Hochwalt on or about July 1, 2017.

12.    JTI employed Hochwalt as a sales manager.

13.    Hochwalt worked by traveling throughout Ohio.

14.    Hochwalt worked from home.

15.    Hochwalt worked from his vehicle.

16.    Hochwalt worked from his laptop and cellphone.

17.     Hochwalt ranked third in sales for JTI in the United States.

18.     Hochwalt had no history of performance issues or discipline while employed by JTI.

19.     Hochwalt has a minor child.

20.     Hochwalt's minor child suffers from a serious medical condition called Epilepsy.

21.     Hochwalt has a record of his minor child's Epilepsy.

22.     Hochwalt's minor child's Epilepsy substantially limits Hochwalt's minor child's major life functions, including learning, sleeping, and communicating.

*23.*     Hochwalt's minor child is disabled within the meaning of Ohio R.C. § 4112.01 *et seq.*

24.     Hochwalt's minor child is disabled within the meaning of the ADA.

25.     In the alternative, JTI perceived Hochwalt's minor child as being disabled.

26.     Hochwalt, being the biological father of his disabled minor child, had a relationship to his disabled minor child

27.     Hochwalt, being the biological father of his disabled minor child, had an association to his disabled minor child.

28.     Despite this relationship or association to his disabled minor child, Hochwalt was still able to perform the essential functions of his job.

29.     JTI believed unfounded stereotypes and assumptions about individuals who associate with people who have disabilities.

30.     JTI assumed that individuals who have a child with a disability will be away from work excessively or be otherwise unreliable.

31.     JTI assumed that individuals who have a child with a disability will contract the disease of the disabled child.

32. JTI assumed that individuals who have a child with a disability will increase the health care insurance costs for the company.

33. JTI knew that Hochwalt's minor child was disabled.

34. On or about October 4, 2023, Hochwalt informed his supervisor, Christopher Hayes, that his minor son suffered an epileptic seizure.

35. On or about October 9, 2023, Hochwalt informed Hayes that he needed to care for his son's health and would therefore miss some work.

36. Hochwalt informed Hayes that his child's illness was going to require Hochwalt to miss work for doctor visits and days when the son simply did not feel well.

37. Hochwalt discussed using paid time off with human resources and he made the decision to file for FMLA.

38. JTI assumed that Hochwalt due to his relationship with his disabled minor child would be away from work excessively or be otherwise unreliable.

39. JTI assumed that Hochwalt due to his relationship with his disabled minor child would contract a disease from his minor child.

40. JTI assumed that Hochwalt due to his relationship with his disabled minor child would increase the health care insurance costs for the company.

41. JTI was, at all times hereinafter mentioned, engaged in commerce or in an industry or activity affecting commerce and employed 50 or more employees for each working day during each of 20 or more calendar work weeks in the current or preceding calendar year and therefore is an employer as defined in 29 U.S.C §2611(4).

42. At all times relevant herein, Hochwalt was employed by JTI for at least 12 months and had at least 1,250 hours of service with JTI and therefore was an "eligible employee" under the FMLA, as that term is defined in 29 U.S.C. §2611(2)(A).

43. During all relevant times, Hochwalt qualified for FMLA leave.

44. Hochwalt placed JTI on notice of his need for medical leave due to his minor child's 's disability.

45. Hochwalt notified his supervisors that he required medical leave to care for his minor child who had a serious health condition.

46. Hochwalt's minor child's 's serious health condition required an overnight stay in a hospital.

47. Hochwalt followed JTI's policies for his medical leave request.

48. On November 15, 2023, Hochwalt applied for FMLA.

49. Hochwalt copied Hayes on the email about FMLA.

50. Hochwalt notified his supervisors that he required medical leave for up to a week at first, then intermittent medical leave as needed to care for his disabled minor child.

51. Hochwalt's minor child's's serious health condition required ongoing medical treatment.

52. Hochwalt's minor child's's serious health condition consisted of a chronic condition.

53. Hochwalt's minor child's chronic condition incapacitated him and required multiple appointments with a health care provider, follow-up care, and prescription medication.

54. Hochwalt's FMLA was approved for the dates of November 15, 2023, through May 14, 2024.

55. Hayes was notified of Hochwalt's FMLA approved dates.

56. Hochwalt immediately noticed a difference in the way Hayes treated him.

57. Before his child was diagnosed with Epilepsy, and before he applied for FMLA, Hayes had not criticized Hochwalt performance, and his tone during meetings and calls was informal and congenial.

58. After Hochwalt's minor child was known as disabled, and after Hochwalt requested use of FMLA leave, Hayes was noticeably harshly critical of Hochwalt's work and behavior.

59. Hayes' demeanor towards Hochwalt became cold, hostile, and overly formal.

60. Hayes treated Hochwalt differently based on Hochwalt's association with a disabled person and because Hochwalt requested FMLA.

61. Less than one month after Hochwalt's FMLA was approved, and approximately eight weeks after notifying Hayes and JTI of his minor child's disability, JTI placed Hochwalt on a performance improvement plan ("PIP").

62. Hochwalt complained that he was placed on a PIP despite being in the top three performers for JTI in retaliation for using FMLA and because of his disabled child.

63. Hochwalt's complaint to Hayes that the PIP was retaliatory and discriminatory was a protected activity.

64. Hayes ordered Hochwalt to sign the PIP before 2pm the day that it was first shown to him and when Hochwalt asked for time to review the PIP, Hayes argued with him that he could not have time to review it.

65. Hayes's refusal of review time was designed to harass and anger Hochwalt so he would resign.

66. Hochwalt fought for his right to at least read the PIP before signing it and Hayes begrudgingly allowed him one day to review it.

67. After his review of the PIP, Hochwalt informed Hayes that he did not agree with the PIP because it contained mischaracterizations of his work.

68. Hayes asked Hochwalt to point out what parts of the PIP were not true so Hochwalt emailed a detailed explanation of the erroneous PIP to Hayes, Medrano, and Edward Hernandez.

69. Hayes and Derek Medrano told Hochwalt they would reach out to him throughout the 30 days of the PIP to see how he progressed.

70. Hayes and Medrano did not reach out to Hochwalt during his PIP.

71. Hayes and Medrano did not reach out to Hochwalt during his PIP because they had no intentions for Hochwalt to use the PIP to improve performance.

72. Hayes and Medrano intended the PIP to induce Hochwalt to resign.

73. On January 10, 2024, Hernandez responded to Hochwalt's email detailing the errors in the PIP.

74. Hernandez said he'd be in touch with Hochwalt soon.

75. Ryan did not hear back from his management or Hernandez until a Teams call on January 31, 2024.

76. During that call JTI terminated Hochwalt's employment.

77. During the termination call, Hochwalt complained again that he was being treated differently because of his use of FMLA and because of his disabled child.

78. As justification for terminating Hochwalt, Hayes, Medrano, Hernandez and JTI claimed that Hochwalt had poor performance.

79. The allegations against Hochwalt had no basis in fact.

80. Hayes, Medrano, Hernandez and JTI intended the allegation that Hochwalt had poor performance to disguise Hayes, Medrano's and JTI's discrimination based on Hochwalt's minor child's disability.

81. Alternatively, JTI's decision to terminate Hochwalt was based on the stereotype that Hochwalt's minor child's disability was an imposition on Hochwalt's job performance.

82. Based on the facts and circumstances known or provided Hayes, Medrano, Hernandez and JTI did not and could not have a reasonable belief that Hochwalt had poor performance.

83. Upon information and belief, after Hochwalt's termination of employment, Defendants hired or retained an individual outside of Hochwalt's protected class to replace Hochwalt.

84. As a result of Defendant's conduct, Hochwalt suffered, and will continue to suffer damages.

### COUNT I: <u>DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA, 42 U.S.C. 12101 et seq.</u>

### <u>(Against JTI Only)</u>

85. Hochwalt restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

86. Hochwalt's minor child suffers from epilepsy, a serious medical condition.

87. Hochwalt's minor child is disabled.

88. In the alternative, JTI perceived Hochwalt's minor child as being disabled.

89. Hochwalt's minor child's condition constituted a physical impairment.

90. Hochwalt's minor child's condition substantially impaired one or more of his major life activities.

91. JTI perceived Hochwalt's minor child's condition to substantially impair one or more of his major life activities.

92. JTI treated Hochwalt differently than other similarly-situated employees based on his minor child's disabling condition.

93. JTI treated Hochwalt differently than other similarly-situated employees based on his minor child's perceived disabling condition.

94. On or about January 31, 2024, Defendant terminated Hochwalt's employment without just cause.

95. Defendant terminated Hochwalt's employment based on his minor child's disability.

96. Defendant terminated Hochwalt's employment based on his minor child's perceived disability.

97. JTI violated the ADA 42 U.S. Code § 12101 *et. seq.* when it terminated Hochwalt's employment based on his minor child's disability.

98. JTI violated the ADA 42 U.S. Code § 12101 et. seq. when it terminated Hochwalt's employment based on his minor child's perceived disability.

99. As a result of JTI's discrimination against Hochwalt in violation of 42 U.S. Code § 12101 *et. seq.* Hochwalt has been denied employment opportunities providing substantial compensation and benefits.

100. As a result of JTI's discrimination against Hohwalt in violation of 42 U.S. Code § 12101 *et. seq.* Hochwalt has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

101. In its discriminatory actions as alleged above, JTI acted with malice or reckless indifference to Hochwalt's 42 U.S. Code § 12101 *et. seq.* rights, thereby entitling Hochwalt to an award of punitive damages.

102.  To remedy the violations of Hochwalt's 42 U.S. Code § 12101 *et. seq.* rights, Hochwalt requests that the Court award him the relief prayed for below.

## COUNT II: RETALIATION IN VIOLATION OF 42 U.S.C. 12203(a)
### (Against JTI Only)

103.  Hochwalt restates every prior paragraph of this Complaint, as if it were fully restated herein.

104.  Pursuant to 42 U.S.C. §12203(a), it is an unlawful discriminatory practice to "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter. "

105.  Hochwalt made a complaint of discrimination and retaliation to Hayes, Medrano, Hernandez and JTI about the discrimination and harassment he suffered as a result of his association with his disabled minor child.

106.  After Hochwalt's complaint of discrimination and retaliation , Hayes, Medrano, Hernandez and JTI retaliated against Hochwalt by terminating his employment.

107.  Hayes', Medrano's, Hernandez's and JTI's actions were retaliatory in nature based on Hochwalt's opposition to and good faith complaint of what he reasonably believed was unlawful discrimination and retaliation.

108.  Hayes, Medrano, Hernandez and JTI violated the ADA by terminating Hochwalt's employment.

109.  As a result of Hayes, Medrano, Hernandez  and JTI's retaliation against Hochwalt in violation of the ADA, Hochwalt has been denied employment opportunities providing

substantial compensation and benefits, thereby entitling Hochwalt to injunctive, equitable, and compensatory monetary relief.

110. As a result of Hayes, Medrano, Hernandez and JTI's retaliation against Hochwalt in violation of the ADA Hochwalt has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

111. Hayes, Medrano, Hernandez and JTI took these actions with malice or reckless indifference to Hochwalt's rights, thereby entitling Hochwalt to an award of punitive damages.

## COUNT III: FMLA INTERFERENCE IN VIOLATION OF 29 U.S.C. § 2601 *ET SEQ.* (AGAINST JTI)

112. Hochwalt restates every prior paragraph of this Complaint, as if it were fully restated herein.

113. Pursuant to 29 U.S.C. § 2601 *et seq.*, covered employers are required to provide employees job-protected, unpaid leave for qualified medical and family situations.

114. JTI is a covered employer under the FMLA.

115. Hernandez is a covered employer under the FMLA pursuant to 29 U.S. Code § 2611(4)(A)(ii)(I).

116. Hayes is a covered employer under the FMLA pursuant to 29 U.S. Code § 2611(4)(A)(ii)(I).

117. Medrano is a covered employer under the FMLA pursuant to 29 U.S. Code § 2611(4)(A)(ii)(I).

118. During his employment, Hochwalt qualified for FMLA leave.

11

119. Hochwalt informed JTI of his need and intention to take time off for FMLA qualifying events.

120. JTI knew or should have known that the events Hochwalt informed them of were FMLA qualifying events.

121. JTI knew or should have known that Hochwalt qualified for FMLA leave.

122. JTI failed to inform Hochwalt that he was eligible for FMLA leave.

123. Pursuant to 29 CFR 825.300(b): "when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days […] The eligibility notice must state whether the employee is eligible for FMLA leave."

124. Instead of informing Hochwalt that he was eligible for FMLA leave, JTI chose to discriminate against Hochwalt.

125. Instead of informing Hochwalt that he was eligible for FMLA leave, JTI chose to harass Hochwalt.

126. To the extent that JTI held any tardies or absences against Hochwalt that should have been FMLA protected when considering whether to terminate his employment, Hochwalt was prejudiced by JTI's failure to provide notice under the FMLA.

127. To the extent that JTI construed Hochwalt's performance as poor while he was off from work during FMLA protected leave when considering whether to terminate his employment, Hochwalt was prejudiced by JTI's failure to provide notice under the FMLA.

128. As a direct and proximate result of JTI's wrongful conduct, Hochwalt is entitled to all damages provided for under 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorneys' fees.

## COUNT IV: UNLAWFUL RETALIATION IN VIOLATION OF THE FMLA

129.    Hochwalt restates every prior paragraph of this Complaint as if fully restated herein.

130.    In or around December 2023, Hochwalt requested FMLA leave and submitted documentation concerning FMLA leave.

131.    Subsequently, Defendants placed Hochwalt on a performance improvement plan in retaliation for his taking the "initial step" towards securing FMLA leave.

132.    Defendants then terminated Hochwalt when their efforts to get him to quit failed.

133.    Defendants retaliated against Hochwalt for taking the "initial step" towards securing FMLA leave by terminating his employment, in violation of 29 U.S.C. § 2615(a).

134.    Defendants did not and could not have a good faith belief that it is lawful to place an employee on a performance improvement plan and/or terminate their employment because they requested FMLA leave.

135.    As a direct and proximate result of Defendants' wrongful conduct, Hochwalt is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## DEMAND FOR RELIEF

WHEREFORE, Ryan Hochwalt requests judgment in his favor against Defendant JTI containing the following:

(a)    An order directing Defendants to place Hochwalt in the position Hochwalt would have occupied but for Defendants' unlawful treatment, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices and other unlawful conduct are eliminated and do not continue to affect Hochwalt;

(b)    An award of damages in an amount to be determined at trial, but in excess of $25,000.00, plus prejudgment interest, to compensate Hochwalt for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

13

(c)  An award of damages in an amount to be determined at trial, but in excess of $25,000.00, plus prejudgment interest, to compensate Hochwalt  for all non-monetary and/or compensatory damages, including, but not limited to, compensation for Hochwalt 's mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

(d)  An award of damages in an amount to be determined at trial, but in excess of $25,000.00, plus prejudgment interest, to compensate Hochwalt  for harm to his professional and personal reputation and loss of career fulfillment;

(e)  An award of damages for all other monetary and/or non-monetary losses suffered by Hochwalt  in an amount to be determined at trial, but in excess of $25,000.00, plus prejudgment interest;

(f)  An award of punitive damages against Hayes, Medrano, Hernandez  only;

(g)  An award of liquidated damages;

(h)  An award of costs that Hochwalt  has incurred in this action, as well as Hochwalt 's reasonable attorneys' fees to the fullest extent permitted by law; and

(i)  Awarding such other and further relief that this Court deems necessary and proper.

Respectfully submitted,

_____
Trisha M. Breedlove (0095852)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (614) 556-4288
Fax: (216) 291-5744
Email:  trisha.breedlove@spitzlawfirm.com

*Attorneys For Plaintiff*

## JURY DEMAND

Plaintiff Ryan Hochwalt  demands a trial by jury by the maximum number of jurors permitted.

_____
Trisha M. Breedlove (0095852)
**SPITZ, THE EMPLOYEE'S LAW FIRM**